NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170588-U

NO. 4-17-0588

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| MARC A. LLOYD, | ) | No. 15CF1036 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed where defendant forfeited any claim of error in his
          sentencing and defendant failed to show, for purposes of plain-error review, that
          any error occurred.

¶ 2       In October 2015, defendant, Marc A. Lloyd, pleaded guilty to failure to register as

a sex offender (730 ILCS 150/3(b) (West 2014)), in exchange for a sentence of 30 months'

probation. In March 2016, the State filed its first petition to revoke defendant's probation for

criminal trespass. In April 2017 and May 2017, the State filed a second petition and a

supplemental petition to revoke probation, respectively. At a June 2017 hearing, defendant

stipulated to the supplemental petition to revoke his probation. In August 2017, the court

resentenced defendant to an extended term of seven years in prison.

¶ 3 Defendant appeals, arguing the trial court improperly sentenced him for conduct while on probation rather than for the underlying offense. We affirm.

¶ 4 I. BACKGROUND

¶ 5 In July 2015, the State charged defendant by information with one count of failure to register as a sex offender (730 ILCS 150/3(b) (West 2014)). In October 2015, defendant pleaded guilty in exchange for a sentence of 30 months' probation.

¶ 6 In March 2016, the State filed a petition to revoke probation alleging defendant committed the offense of criminal trespass to real property (720 ILCS 5/21-3(a)(3) (West 2014)). Defendant pleaded guilty to criminal trespass in exchange for a sentence of 28 days in jail. As part of the plea agreement, the State agreed to dismiss the petition to revoke probation.

¶ 7 In April 2017, the State filed a second petition to revoke probation, alleging defendant committed the offenses of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2014)) and battery (720 ILCS 5/12-3(a)(2) (West 2014)). In May 2017, the State filed a supplemental petition to revoke probation, alleging defendant committed the offense of unlawful failure to register as a sex offender (730 ILCS 150/3 (West 2014)). In June 2017, defendant stipulated to the allegations in the supplemental petition, and the trial court revoked defendant's probation. As a part of the agreement, the State agreed to dismiss the second petition to revoke probation.

¶ 8 In August 2017, the trial court conducted the resentencing hearing. After hearing the parties' arguments, the court ruled as follows:

"The Court has considered the presentence report of Court Services, the documents attached, all relevant statutory factors, including, but not limited to, the nature and circumstances of the offense, the evidence and applicable factors in

aggravation and mitigation, the character, history and rehabilitative potential of the defendant, his statement in allocution here and the arguments and recommendations of counsel.

[Defendant] is 37 years old. He presents an extensive history going back 13 years over three states with nine felony convictions, two misdemeanor convictions and a contempt finding. He has been sentenced to some form of imprisonment multiple times, approximately eight times, seven, eight times, and he's received sentences from one year to 45 months as well as some county jail time. He's had two terms of probation, including the most recent one that was unsuccessful for the reasons stated with the clarifications made here from the additional evidence.

He has unfortunately not used that time to change his ways and it has not gotten his attention or had the desired effect on rehabilitative potential as he's gone through these different cases. He commenced in 2004 with two separate sex offenses from Nevada. He failed to the [*sic*] register as a sex offender now three times, in March of 2007, October 2008 and October 2015 as well as the one that we know he failed to register while he was on probation. And so he is well aware of his responsibility to do so and the consequences of not doing so.

He has other serious offenses as well including from Indiana residential entry, criminal recklessness that resulted in serious bodily injury to another individual as well as the other offenses documented in the presentence report, and he does have a history of housing instability. I am certainly aware and have considered the difficulties that are presented with homelessness and the fact that

he has no significant ties to Illinois and is not able to have his probation transferred to Indiana. While certainly that's not a source of aggravation and it can well be and should be viewed as a factor in mitigation when Court weighs in the hardships, in this case, the defendant's peripatetic and unstable lifestyle is a direct product of the choices he has made despite the intervention that's been offered by Mr. Jessup[, defendant's probation officer,] and Ms. Difanis, his counselor.

He continues to involve himself in unstable and inappropriate relationships that disintegrate into at times domestic violence or obsessive and unwelcome focus on the other participant from past relationships, and despite Mr. Jessup's efforts to redirect him, he's continued then to derail his ability to achieve stable housing and job security because he continues to drift rather by preference to these relationships.

He does not follow them on the recommendations, advice or referrals that have been made for him repeatedly from the moment he started his probationary journey, and he's had the benefit of two excellent advocates, Mr. Jessup and Ms. Difanis.

I have considered the recent diagnosis of mental health issues. Unfortunately, that's subject to the same pattern of disregard. [Defendant] has not followed through with treatment recommendations or consistently taken the psychotropic medication that would keep him stable, and I have considered that as a factor in both—in mitigation, but I would also note there's an element of gamesmanship in his evasiveness with Mr. Jessup, such as where he was residing.

He has ignored efforts to assist him with obtaining employment, housing, education and not able to follow through with that, and, and registration as a sex offender, and it's almost exhausting to read what Mr. Jessup has had to do in tracking him, trying to get him refocused [*sic*] and back on track. He did have referrals as well for anger management counseling which became a very evident need as he continued to have these disintegrating relationships that basically fell apart into violent interactions with several of the women in his life. He had—the same counselor that has been seeing him through from Rosecrance, Ms. Difanis, was actually conducting those courses, and he did not follow through with those, and he was given a lot of opportunities to do so.

And most critical was the sex offender treatment. He did not participate meaningfully in it. He did attend at times. He did share as a member of the group but was unwilling to then take the further step of accepting feedback or responsibility and ultimately was terminated due to lack of attendance, so he has yet to complete that program.

So the Court is confronted with a twice convicted sex offender who is not registering, not getting help, continuing to immerse himself in unhealthy relationships, not following through on the medication recommended for him for stability, drifting through the community, unwilling to accept or complete any counseling, including anger management and sex offender and continuing to evade the responsibilities he has. That creates a time bomb for the community.

At some point, the Court does have to prioritize the safety of the community, which is a compelling factor, and measure the opportunities

squandered in the fact that these were no longer voluntary options, but this was a Court-ordered requirement that he was not following through on. So for 19 months, he was given every opportunity to stay in the community and work on his issues, and he rejected them because it was inconvenient for him and conflicting with the lifestyle he has adopted for himself.

The only way that Mr. Jessup could keep track of him, frankly, was chasing him down and babysitting him and trying to keep up with the GPS monitor at some point, and it's a total misuse of Mr. Jessup's time as well when everything has been tried over and over and over and it's simply not successful. Deterrence becomes an issue for those who continue to disregard Court orders and the law and for those who do try to follow through with the efforts to complete probation. And what's the message to them if there are no repercussions?

It's very clear that, again, Mr. Jessup went to heroic efforts to try and redirect [defendant] repeatedly over the last 19 months and was unsuccessful because [defendant] didn't want to do it. I cannot find any basis for even a remote likelihood of success of compliance with a community-based sentence again. There's nothing for the Court to reasonably conclude that that would have any effect, and it would simply be more of Mr. Jessup trying to track down [defendant] and convince him he needs to do what he needs do this time. And given [defendant]'s unwillingness to do so when he's free, and the record he's demonstrated about not following through, it's apparent it would not be successful.

Despite his protests here as he's facing a sentence, there's nothing for this Court to find it's anything other than an attempt not to face the penalties that are in place for the choices he's made. Nothing he's done over the last few decades instills any confidence that it would be any different this time.

So what the Court has here is an untreated and and [*sic*] erratic sex offender with a history of not registering and of not following Court orders or the law. That is absolutely a time bomb I'm not willing to unleash on the community again. The Court has an obligation to protect the community.

Having regard to the nature and circumstances of the offense and to the history, character and rehabilitative potential of the defendant, I find that at this point we've exhausted every resource to keep him in the community and he's rejected that by his unwillingness to participate, imprisonment is absolutely necessary for the protection of the public, and a community-based sentence would deprecate the seriousness of defendant's conduct and be inconsistent with the ends of justice.

I don't believe that the full amount is required here under all of the circumstances I've considered and all of the factors in aggravation and mitigation, I believe an extended term sentence of seven years incarceration in the Illinois Department of Corrections is the appropriate sentence followed by two years of mandatory supervised release."

¶ 9    This appeal followed.

¶ 10                             II. ANALYSIS

¶ 11        On appeal, defendant argues the trial court improperly sentenced him for conduct while on probation rather than resentencing him for the underlying offense of failure to register as a sex offender. Defendant admits he failed to preserve this issue where he made no contemporaneous objection and neglected to file a motion to reconsider the sentence. Accordingly, we conclude defendant has forfeited this claim on appeal. However, defendant asks this court to review his contentions under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan.1, 1967)).

¶ 12        To obtain relief under the plain-error doctrine, the defendant must first show a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). In the sentencing context, a defendant must then demonstrate that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187. Under both prongs, the defendant bears the burden of persuasion. *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187. "If the defendant fails to meet his burden, the procedural default will be honored." *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1188. Thus, we begin by determining whether an error occurred.

¶ 13        "When a sentence of probation has been revoked, the trial court may impose any other sentence that was available *** at the time of the initial sentencing." (Internal quotation marks omitted.) *People v. Somers*, 2012 IL App (4th) 110180, ¶ 21, 970 N.E.2d 606; see also 730 ILCS 5/5-6-4(e) (West 2014). The court may consider the defendant's conduct while on probation in reassessing his rehabilitative potential; however, the sentence imposed must not be punishment for the probation violation. *People v. Risley*, 359 Ill. App. 3d 918, 920, 834 N.E.2d 981, 983 (2005). "A sentence within the statutory range for the offense will not be disturbed as an abuse of discretion unless this court is strongly persuaded that the sentencing judge intended

to penalize the defendant for violating his probation." *Risley*, 359 Ill. App. at 920-21, 834 N.E. 2d at 983. A trial court's remarks "must be taken in context, and read in their entirety, including arguments of counsel." *People v. Young*, 138 Ill. App. 3d 130, 142, 485 N.E.2d 443, 450 (1985).

¶ 14 Failure to register as a sex offender is a class 3 felony with a sentencing range of probation or between two and five years in prison. 730 ILCS 150/10(a), 5/5-4.5-40(a), (d) (West 2014). Due to defendant's prior felony convictions, he was eligible for an extended-term prison sentence of up to 10 years. See 730 ILCS 5/5-4.5-40(a), 5-5-3.2(b)(1) (West 2014). Accordingly, defendant's sentence of seven years in prison fell within the statutory sentencing range for the offense and was three years less than the State requested. The court indicated it considered the statutory factors in aggravation and mitigation in reaching its decision. The court specifically addressed "all relevant statutory factors, including, but not limited to, the nature and circumstances of the offense, the evidence and applicable factors in aggravation and mitigation, the character, history and rehabilitative potential of the defendant, his statement in allocution here and the arguments and recommendations of counsel." *C.f. People v. Varghese*, 391 Ill. App. 3d 866, 877, 909 N.E.2d 939, 949 (2009) (remanding for resentencing where the trial court never expressly considered the underlying offense when fashioning its sentence). In considering defendant's request for another community-based sentence, the court commented on defendant's history of unsuccessful community-based sentences as well as his conduct while on probation in this case. While the court suggested "repercussions" may be warranted where defendant continued to disregard court orders and the law while on probation, it did so in the context of considering defendant's rehabilitative potential and the threat he posed to the community. The court found defendant's "unwillingness" to comply with the requirements of a community-based sentence demonstrated it was "apparent [a community-based sentence] would not be successful."

In its final comments before rendering its sentence, the court made clear its sentence was based on the "nature and circumstances of the offense and to the history, character and rehabilitative potential of the defendant[.]" After reviewing the court's comments in their entirety, we are not persuaded the court's sentence was intended to penalize defendant for his conduct while on probation rather than the underlying offense.

¶ 15      Since we have found no error, defendant cannot establish plain error. Thus, we honor his forfeiture.

¶ 16      III. CONCLUSION

¶ 17      For the reasons stated, we affirm the trial court's judgment.

¶ 18      Affirmed.