2021 IL App (1st) 180264-U

No. 1-18-0264

FIFTH DIVISION
MARCH 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 758 |
| | ) | |
| DARRELL JOHNSON, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant's 14-year sentence for burglary is affirmed where the sentencing court did not plainly consider an improper factor in aggravation and thus did not commit plain error.

¶ 2     Following a bench trial, the defendant Darrell Johnson was convicted of burglary (720 ILCS 5/19-1 (West 2016)) and sentenced to 14 years of imprisonment. He appeals, arguing that (1) the sentencing court improperly considered in aggravation, the prosecutor's unsworn

allegations regarding two pending cases; and (2) trial counsel was ineffective for not objecting to the unsworn allegations and the court's consideration of them. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged by information with eight counts of criminal offenses pursuant to an incident that occurred on December 19, 2016. The State proceeded to trial against the defendant on counts I through IV for burglary and VI and VIII for theft.

¶ 5      At trial, Kristen Leffel testified that on December 19, 2016, she worked for the 30 Million Words Initiative in a first-floor office located at the University of Chicago Hospital in the 900 block of East 59th Street in Chicago. At around 2:40 p.m., she left her office for "a few minutes," and when she returned, she saw a man exit the office holding her cashbox. Ms. Leffel identified the defendant in court as that man. Ms. Leffel confronted the defendant, who insisted the cashbox belonged to him. The defendant walked towards the exit, and Ms. Leffel returned to her office, confirmed that her cashbox was missing, and called the University of Chicago Police Department.

¶ 6      Ms. Leffel went to the fourth floor of the hospital, where she spoke with police officers and identified the defendant in still photograph images from surveillance footage of the area. Later, Ms. Leffel again identified the defendant once he was in police custody. Ms. Leffel went to the police department later that afternoon, where police officers showed her a laptop, a power cord, and her boss' identification card. She had not given anyone permission to enter the office and take the laptop.

¶ 7      On redirect examination, the State introduced People's Exhibit No. 2, a surveillance video of the incident, and published it to the court. The video, which is included in the record on appeal,

has no audio component. However, it is consistent with Ms. Leffel's testimony regarding the confrontation between the defendant and herself outside her office.

¶ 8     The State entered stipulations that if called, Kristen Kinutson and Harry Whitmore would both testify that their offices were also located in the hospital building and their laptop computers were also stolen on December 19, 2016.

¶ 9     Sergeant Shannon[1] of the University of Chicago Police Department testified that he responded to a call from the hospital on December 19, 2016, and met with "some victims" who described thefts that had occurred. Based on that conversation, Sergeant Shannon relayed a description of a suspect to other police officers. Sergeant Shannon later received information about a potential suspect's location one street away from the hospital. He responded to that location, and after a pursuit, located the suspect hiding in a garbage can. Sergeant Shannon identified that person in court, as the defendant. While searching the defendant, Sergeant Shannon recovered "a large amount of cash" and an identification card.

¶ 10     University of Chicago police officer Christopher Williams testified that he also pursued and helped detain the defendant on December 19, 2016. Officer Williams observed the defendant enter a parking lot near the hospital. The defendant then discarded a backpack, jumped over a fence, then crawled into a nearby garbage can. Officer Williams "kept a visual" on the garbage can and informed Sergeant Shannon of the defendant's location. Sergeant Shannon arrived and removed the defendant from the garbage can. Officer Williams also identified the defendant in court. After Sergeant Shannon detained the defendant, Officer Williams recovered the backpack

---

[1] Sergeant Shannon's first name does not appear in the report of proceedings.

which the defendant had discarded. It contained six to seven laptops and power cords, along with other "miscellaneous" items.

¶ 11 Following closing arguments, the court found the defendant not guilty of burglary on count III but guilty of burglary and guilty of theft on counts VI and VIII.

¶ 12 On December 1, 2017, the court arraigned the defendant on a new case, No. 17 CR 15859, which the court described as "a new charge of burglary alleging [that on] December 12, 2016 [defendant] entered [the] building, [of] Planned Parenthood, with the intent to commit [a] theft."

¶ 13 At a court appearance on January 10, 2018, an attorney from the public defender's office told the court; "I believe this was scheduled to be a sentencing. We're trying to see if we can resolve the other two matters along with the sentencing, Judge."

¶ 14 On January 17, 2018, the court denied the defendant's motion for a new trial in the instant case and that matter then moved to the sentencing phase.

¶ 15 The defendant's presentence investigation (PSI) report showed that he was 26 years old at the time of the offenses in the instant case. He had prior convictions for street gang contact, aggravated unlawful use of a weapon (AUUW), criminal trespass, theft, receipt of stolen property, and two convictions for residential burglary. He also had a pending burglary charge in case No. 17 CR 9498.

¶ 16 At the sentencing hearing, the prosecutor stated that the defendant was subject to Class X sentencing. In aggravation, the State referenced defendant's prior criminal record, including five adjudications as a juvenile and four felonies as an adult, among them AUUW and two convictions for residential burglaries.

¶ 17    The prosecutor also stated that the defendant had "two other cases pending here," and described to the court the factual bases of the two pending cases. First, the prosecutor stated that in case No. 17 CR 15859, video evidence would show that on December 12, 2016, the defendant entered a closed Planned Parenthood facility and "went from office to office," rummaging through drawers. The defendant threw a safe out of a window, then located a computer room, from which he removed 11 computers. The video further showed that the defendant exited the facility with "two large bags." Police officers responding to another burglary in the area saw the defendant fleeing and recovered the bags that the defendant had dropped. The bags contained the Planned Parenthood computers. The defendant was later identified through a data base as being the perpetrator.

¶ 18    Second, the prosecutor stated that in case No. 17 CR 9498, "another burglary," video evidence would show that the defendant entered a dry-cleaning business and removed the cash register, took it to a nearby garbage compactor, and eventually successfully opened the register whereupon he removed "about $160." That case was supported by video and fingerprint evidence as well. The prosecutor relayed that the victims in both pending cases agreed to allow the cases to be used as aggravation in the instant matter. The defendant did not object to the prosecutor's statements regarding the two pending cases.

¶ 19    The State requested a sentence of "at least 18 years." In mitigation, defense counsel emphasized that the defendant had earned a GED, had two daughters and wanted to return to his family, and that he worked at New Beginnings Church before his arrest in the present case. The defendant did not speak in allocution.

¶ 20    The court merged the counts into count I for burglary (720 ILCS 5/19-1 (West 2016)) and sentenced the defendant to 14 years of imprisonment, reasoning that the minimum sentence was inappropriate. In so finding, the court stated, "it's not a question of just robbing stores that are closed, [but you put] people in [d]anger [by doing] these things [because] police respond, [and] you're running through public areas." The court referenced the defendant's prior residential burglary convictions, stating, "that means you broke into someone's home. There's always a risk that something terrible could go wrong when someone does that." The court emphasized that the defendant's current crime placed "people in danger" because the police chased defendant in "broad daylight" at the University of Chicago with "people all over the place." The court concluded that something "terrible" could happen if defendant persisted with his criminal behavior, potentially leading to him spend the "rest of his life" in prison. The court denied the defendant's motion to reconsider sentence. Before the sentencing hearing ended, the State nol-prossed the two pending burglary charges. The defendant filed a timely notice of appeal; therefore, this court has jurisdiction to hear this appeal.

¶ 21                                    ANALYSIS

¶ 22    On appeal, the defendant argues that his sentence is invalid because the sentencing court considered an improper factor in aggravation, specifically the prosecutor's statements during the sentencing hearing relaying the facts underlying his two pending burglary charges. The defendant admits that he did not preserve this claim through a timely objection and inclusion in a postsentencing motion but contends we can reach the issue by plain error review. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). The State argues in response that the information that the prosecutor relayed regarding the pending cases did not constitute an improper factor in

aggravation, and even if it did, the record does not show that the court considered that information in arriving at its sentence. In so arguing, the State contends that the record reflects a "tactical agreement" between defense counsel and the State's Attorney's Office to proceed at sentencing by permitting the State to relay the alleged facts underlying the pending charges to the court such that the court could consider the cases in aggravation, after which the State would nol-pros the pending charges.

¶ 23    Plain error review is appropriate where the lower court committed a clear or obvious error and the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or where "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. In sentencing cases, "a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Our first step is to determine whether the lower court committed a clear or obvious error. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 24    The sentencing court's decision is generally entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The court will be presumed to have only considered appropriate factors absent an affirmative showing from the record to the contrary. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 93. The defendant bears the burden to demonstrate that the sentencing court used an improper aggravating factor. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49. When determining whether the sentencing court considered an improper factor in aggravation, the

reviewing court must consider the sentencing hearing as a whole and not base its decision on an isolated statement by the sentencing court. *Id.* ¶ 50.

¶ 25    The sentencing court may consider a defendant's criminal record as a factor in aggravation. See 730 ILCS 5/5-5-3.2(a)(3) (West 2016). The court may not, however, "rely on bare arrests or pending charges in aggravation of a sentence." *People v. Minter*, 2015 IL App (1st) 120958, ¶ 148. While the court may consider unconvicted conduct, it may only do so where the "evidence" is "relevant and accurate," and a list of charges unsupported by live testimony or other evidence at the sentencing hearing does not meet this standard. *Id.* Whether the sentencing court considered an improper factor in aggravation is a matter of law that we review *de novo. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 26    As relevant here, the defendant was subject to sentencing as a Class X offender, which carries a term of 6 to 30 years. 730 ILCS 5/5-4.5-25 (West 2016).

¶ 27    In aggravation at sentencing, the State emphasized the defendant's criminal record, which included two convictions for residential burglary. The State also referenced the defendant's two pending charges for burglary and made representations about the evidence in each of those matters. The State told the court that the defendant entered a Planned Parenthood office and a dry cleaner when each was closed and removed items. The State did not call witnesses regarding the pending charges or offer other evidence besides the prosecutor's statements.

¶ 28    The court imposed a 14-year sentence which is within the lower end of the applicable sentencing range. In explaining its rationale, the court stated that the defendant's conduct in this case was not just a "question" of burglarizing "stores that are closed," but rather, involved entering the hospital in "broad daylight" and ended in a police pursuit in a public area, which potentially

endangered the public. The court also noted that the defendant had two convictions for residential burglary, which the court believed was a dangerous crime because it involved entering people's homes. Finally, the court admonished the defendant that he must stop his criminal behavior because something "terrible" could happen.

¶ 29    On this record, we do not find that the court considered the prosecutor's remarks regarding the two pending burglary matters as aggravating factors. The court *contrasted* the allegations in the pending cases, where the defendant entered "closed" establishments, with his behavior in the present case and previous matters, specifically the defendant entering people's homes in his two prior residential burglary convictions, while in this case, burglarizing the hospital in "broad daylight." The court believed the defendant's behavior in the instant case was dangerous to the community, and it was this danger that the court cited in increasing the defendant's sentence from the minimum. Thus, the record shows that the court increased the defendant's sentence from the minimum based on *proper* aggravating factors, specifically the nature and circumstances of his *present* crime and his criminal history. See *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986); 730 ILCS 5/5-5-3.2(a)(3) (West 2016).

¶ 30    The defendant argues that the fact that the court appeared to explicitly reference the pending charges by mentioning burglaries at "closed" establishments and admonishing the defendant to "knock this off" before something "terrible" happens demonstrates that the court gave the pending charges some weight in aggravation. However, the mere mention of an allegedly improper factor, does not indicate that the court erroneously used the factor in aggravation, as the court is presumed to only use appropriate factors unless the record affirmatively rebuts this presumption. See *Kelley*, 2015 IL App (1st) 132782, ¶ 93. Here, the record does not rebut this

well-established presumption. Additionally, the admonition to "knock off" the criminal conduct was not made in specific reference to the pending charges and can reasonably be understood to reference defendant's previous or present burglary convictions and general criminal behavior.[2]

¶ 31    Because we find that the sentencing court did not commit a clear or obvious error, plain error review is inappropriate, and the defendant's claim fails.

¶ 32    Finally, the defendant contends that trial counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel.

¶ 33    To establish an ineffective assistance of counsel claim, a defendant must show that counsel's conduct was objectively unreasonable, and that the conduct prejudiced the defendant. *People v. Domagala*, 2013 IL 113688, ¶ 36. The defendant must establish both prongs of the test. Therefore, if the defendant cannot establish prejudice, a reviewing court need not consider whether counsel's conduct was objectively unreasonable. See *People v. Givens*, 237 Ill. 2d 311, 331 (2010). Here, because we find that the sentencing court did not improperly consider allegations regarding the pending burglary charges as an aggravating factor in the defendant's sentencing in the instant case, counsel's failure to object to those allegations did not prejudice the defendant. Accordingly, the defendant's ineffective assistance of counsel claim fails.

¶ 34    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.

---

[2] Because we find the court did not consider the pending charges and their alleged underlying factual bases in aggravation, we do not reach the parties' dispute over whether the prosecutor's statements relaying the factual bases was competent evidence at sentencing.